UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| KEVIN EBY,<br><br>      Petitioner,<br><br>vs.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,<br><br>      Respondent. | Case No.: 2:14-cv-00117-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

      Pending before this Court is Kevin Eby's Petition for Review (Docket No. 1), seeking review of the Social Security Administration's ("SSA") final decision to deny his claim for Social Security Disability Benefits for lack of disability. The action is brought pursuant to 42 U.S.C. § 405(g). Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

### I.  ADMINISTRATIVE PROCEEDINGS

      On January 24, 2011 Kevin Eby ("Petitioner") protectively filed a Title II application for a period of disability and disability insurance benefits. Petitioner alleged disability beginning August 1, 2009. The claim was initially denied on May 23, 2011 and, again, on reconsideration on July 18, 2011. On August 11, 2011, Petitioner timely filed a Request for Hearing before an Administrative Law Judge ("ALJ"). On September 6, 2012, ALJ R.J. Payne held a hearing in Spokane, Washington, at which time, Petitioner, represented by attorney Mark B. Jones, appeared and testified. Impartial medical expert , Minh D. Vu, M.D., also appeared and testified during the same September 6, 2012 hearing.

**MEMORANDUM DECISION AND ORDER - 1**

On September 20 2012, the ALJ issued a Decision denying Petitioner's claim, finding that Petitioner was not disabled within the meaning of the Social Security Act.  Petitioner timely requested review from the Appeals Council on or around October 9, 2012.  On January 30, 2014, the Appeals Council denied Petitioner's Request for Review, making the ALJ's decision the final decision of the Commissioner of Social Security.

Having exhausted his administrative remedies, Petitioner timely files the instant action, arguing that "[t]he conclusions and findings of fact of the defendant are not supported by substantial evidence and are contrary to law and regulation."  Compl., p. 2 (Docket No. 1).  Specifically, Petitioner argues that new and material evidence exists to support his disability and that such evidence was unavailable to the ALJ at the time of the September 6, 2012 hearing.  *See generally* Pet.'s Brief (Docket No. 14).  Petitioner therefore requests that "the matter should be remanded to the ALJ for further proceedings."  *Id*. at p. 5

## II.  STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards.  42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).  Findings as to any question of fact, if supported by substantial evidence, are conclusive.  42 U.S.C. § 405(g).  In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence.  *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971);

**MEMORANDUM DECISION AND ORDER - 2**

*Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).  The standard requires more than a scintilla but less than a preponderance (*see Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ.  *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony (*see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)), resolving ambiguities (*see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)), and drawing inferences logically flowing from the evidence (*see Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).  Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ.  *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error.  *Matney*, 981 F.2d at 1019.  The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id*.  However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

**MEMORANDUM DECISION AND ORDER - 3**

## III. DISCUSSION

### A. Sequential Process

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe his physical/mental impairments are and regardless of his age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner has not engaged in substantial gainful activity since August 1, 2009, the alleged disability onset date. (AR 13).

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c).

**MEMORANDUM DECISION AND ORDER - 4**

An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner had the following severe impairments: (1) degenerative disc disease lumbar and thoracic spine; (2) bilateral shoulder problems; (3) degenerative joint disease left shoulder, status post fracture; (4) right hip bursitis status post surgery in 2000; and (5) history of right ankle fracture status post surgery. (AR 13-15).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *Id*. Here, the ALJ concluded that Petitioner's above-listed impairments, while severe, do not meet or medically equal, either singly or in combination, the criteria established for any of the qualifying impairments. (AR 15-16).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite

**MEMORANDUM DECISION AND ORDER - 5**

limitations from his impairments. 20 C.F.R. §§ 404.1545, 416.945. Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ determined:

> After careful consideration of the entire record, the undersigned finds that the [Petitioner] has the residual functional capacity to perform light work as defined in 20 C.F.R. [§ ]404.1567(b) except occasionally bend, balance, stoop, crouch, crawl, kneel, climb ramps and stairs, but never, climb ladders, robes o[r] scaffolds; he can occasionally reach overhead with his right dominant upper extremity, but never reach overhead with his left, non-dominant upper extremity; he can push or pull with upper and lower extremities . . . within the limitations for light work lifting or carrying.

(AR 16-19).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). If the claimant is able to do other work, he is not disabled; if the claimant is not able to do other work and meets the duration requirement, he is disabled. Here, the ALJ found that Petitioner is unable to perform any past relevant work as a press operator, green chain puller, and dry chain puller. (AR 19-20). However, considering Petitioner's age, education, work experience, and residual functional capacity, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that [Petitioner] can perform." (AR 20).

**MEMORANDUM DECISION AND ORDER - 6**

**B.     Analysis**

    1.     Factual Background

Although recognizing Petitioner's "degenerative disc disease lumbar and thoracic spine" to be a "severe impairment" under the Social Security Act, applicable regulations, and pertinent case law, the ALJ determined that Petitioner's "statements concerning the intensity, persistence, and limiting effects" of the corresponding symptoms to not be credible. (AR 13-14, 17-19). According to Petitioner:

> [t]hese conclusions so infuriated [him] that after receiving the Decision of September 20, 2012, he was somehow able to obtain an MRI of his Lumbar and Thoracic spine. These MRIs were performed on the 9th day of November 2012 . . . .

Pet.'s Brief, p. 3 (Docket No. 14). On November 19, 2012, Petitioner included the November 9, 2012 MRI reports as part of his Request for Review to the Appeals Council. (AR 329-334). On January 20, 2014, the Appeals Council "considered" this additional evidence[1] but nonetheless found that it did not provide a basis for changing the ALJ's decision. (AR 1-2).

Through this action, Petitioner "seeks remand [because] new and material evidence was obtained which was unavailable to the petitioner at the time the only administrative hearing was held." Pet.'s Brief, p. 4 (Docket No. 14); *see also id*. at p. 5.

---

[1] On December 10, 2012, Petitioner also included the following records as part of his Request for Review to the Appeals Council: (1) a November 27, 2012 treatment note from Jennifer Eickstadt, PA-C; and (2) a September 28, 2012 "Upper Respiratory Infection Exam" form. (AR 324-328). Interestingly, the November 27, 2012 treatment note indicates a "follow up MRI" and that the "MRI [was] reviewed with patient." (AR 326). It is unclear if the reference here to "MRI" relates to the November 9, 2012 MRI (*see supra*) or a separate MRI. There is no record of a post-hearing MRI other than the November 9, 2012 MRIs of Petitioner's lumbar and thoracic spine.

**MEMORANDUM DECISION AND ORDER - 7**

2.	Newly-Submitted Evidence: Applicable Law

"Social security claimants usually have one opportunity to prove their disability. If this were not the case, the administrative proceedings would become an unending merry-go-round." *Coulbourn v. Astrue*, 2008 WL 2413169, *8 (E.D. Cal. 2008) (internal quotation marks omitted). However, SSA regulations "permit claimants to submit new and material evidence to the Appeals Council and require the Council to consider that evidence in determining whether to review the ALJ's decision, so long as the evidence relates to the period on or before the ALJ's decision." *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1162 (9th Cir. 2012); *see also* 20 C.F.R. §§ 404.970(b), 404.976(b)(1). New evidence is material if it bears "directly and substantially on the matter in dispute." *Luna v. Astrue*, 623 F.3d 1032, 1034 (9th Cir. 1984). Review of the case is warranted only if the Appeals Council finds "that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b).

Where, as here, the Appeals Council considered additional evidence but denied review, the additional evidence becomes part of the record for purposes of the Court's analysis. *See Brewes*, 682 F.3d at 1163 ("[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence."); *accord Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1232 (9th Cir. 2011) (courts may consider evidence presented for first time to Appeals Council "to determine whether, in light of the record as a whole, the ALJ's decision was supported by substantial evidence and was free of legal error"). Remand is necessary where the material

**MEMORANDUM DECISION AND ORDER - 8**

evidence gives rise to a "reasonable possibility" that the new evidence might change the outcome of the administrative hearing. *See Borrelli v. Comm'r of Soc. Sec.*, 570 Fed. Appx. 651, 652 (9th Cir. 2014) (citing *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380-81 (9th Cir. 1984)).[2]

> 3. The November 9, 2012 MRI Reports Do Not Render the ALJ's Decision as Lacking in Substantial Evidence

Quoting directly from the November 9, 2012 MRI report relating to his lumbar spine, Petitioner states that it "demonstrates moderate left foraminal stenosis at two levels, and mild right foraminal stenosis at one level and moderate at a second level" in addition to "severe left and mild right facet arth[r]opathy." Pet.'s Brief, p. 4 (quoting (AR 334)). In turn, Petitioner argues that "[t]he new evidence demonstrates that [he] has significant lumbar disc disease" and also "supports [his] testimony about 'the intensity, persistence, and limiting effects of' the symptoms which the ALJ found 'not credible.'" *Id*. (quoting (AR 17)). But Petitioner's arguments in these respects miss the point.

First, there is no question that Petitioner has lumbar disc disease and that this impairment is severe. Indeed, the ALJ concluded as much when making his disability determination. *See supra* (citing (AR 13-14) (stating "above-referenced conditions" (including degenerative joint disease and degenerative disc disease) "are found to constitute 'severe' impairments for the

---

[2] Claimants need not show good cause before submitting new evidence to the Appeals Council. *See Brewes*, 682 F.3d at 1162; *see also Brent v. Astrue*, 2010 WL 3521788, *5 (C.D. Cal. 2010) ("While Section 404.970(b) dictates the proper procedure for the Appeals Council to follow in deciding whether to review a case in light of the submission of new evidence, Section 405(g) – which, unlike the aforementioned regulation, requires a showing of 'good cause' for the belated submission of new evidence – governs 'judicial review' of new evidence *submitted for the first time to the district court*. This Court will not superimpose the 'good cause' requirement of Section 405(g) onto the Appeals Council's review of new evidence pursuant to Section 404.970(b).") (emphasis in original, internal citations omitted)).

**MEMORANDUM DECISION AND ORDER - 9**

purposes of this adjudication."). Therefore, to the extent the at-issue November 9, 2012 MRI report can be read to "demonstrate" Petitioner's lumbar disc disease, it necessarily would not have altered the ALJ's Decision – it *supports*, not detracts from, the ALJ's conclusions on this issue.

Second, the March 9, 2012 MRI report speaks to the second step of the sequential process in that it helps identify a "medically determinable impairment or combination of impairments." *See supra*. Importantly, the March 9, 2012 MRI report *does not* inform the fourth step of the sequential process – Petitioner's residual functional capacity to do physical work despite his degenerative disc disease. *See id*. It is on this discrete point that the ALJ questioned Petitioner's credibility, not whether, in fact, Petitioner had degenerative disc disease. (AR 16-19). Simply put, the March 9, 2012 MRI report neither buttresses nor diminishes the ALJ's credibility analysis.

As the trier of fact, the ALJ is in the best position to make credibility determinations and, for this reason, his determinations are entitled to great weight. *See Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir. 1990). In evaluating a claimant's credibility, the ALJ may consider a claimant's reputation, inconsistencies either in testimony or between testimony and conduct, daily activities, past work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms. *See Light v. Social Sec. Admin.*, 119 F.3d 789, 791 (9th Cir. 1997). The ALJ may also consider location, duration, and frequency symptoms; factors that precipitate and aggravate those symptoms; amount and side effects of medications; and treatment measures taken by claimant to alleviate those symptoms. *See* Soc. Sec. Ruling (SSR) 96-7p. In short, "[c]redibility decisions are the province of the ALJ." *Fair v.*

**MEMORANDUM DECISION AND ORDER - 10**

*Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).  Still, to reject a claimant's testimony, the ALJ must make specific findings stating clear and convincing reasons for doing so.  *See Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).  Here, *even when considering* the March 9, 2012 MRI report post hoc, the ALJ provided sufficient reasons for calling into question Petitioner's credibility.

Within his March 15, 2011 "Function Report," Petitioner alleged that "[his] back hurts very bad most the day" and "[he] ha[s] to take pain medicine."  (AR 165).  Therein, Petitioner further alleged that he was "[n]ot sure what [he] can lift or walk"; "standing [his] right hip and leg goes numb and back hurts after 15 or 20 min[utes]"; "sitting causes [his] back to hurt"; and he could only walk 100 yards before having to stop and rest for two minutes.  (AR 170).  At the September 6, 2012 hearing, Petitioner expounded upon these limitations, testifying that he is "not able to perform any work" largely because of his back:

> ATTY:    Okay, so what is it – when you apply for social security, you say you're not able to perform any work that's available. What is it that's keeping you from being able to work?
>
> PET:     My back and anymore, if I try to do anything that overexerts me, the next day, I really have a hard time.  And I have to take pain medication now, and a lot of places won't hire me, because I'm taking pain medication.
>
> ATTY:    When you say you overexert yourself, what type of activity would be an example of overexerting yourself?
>
> PET:     Painting for four hours or whatever.  I've been helping my sister and brother-in-law, doing some odds and ends.
>
> ATTY:    Okay.  And, if you work for four hours?
>
> PET:     I would go home hurting.  And then, the next day, a lot of times, you know, sometimes I couldn't perform.

. . . .

**MEMORANDUM DECISION AND ORDER - 11**

ALJ: All right. And, do you have pain all the time, or does the pain come and goes?

PET: Well, some days, it's all the time. And some days, it comes and goes.

ALJ: Mm-hmm. And what does it feel like?

PET: Right now, it's a dull ache in my lower back.

ALJ: Normally, what does it feel like?

PET: Well, it varies. There's always the aches, it seems like.

. . . .

ALJ: And, I'm going to see if I can get a little better feel for the severity of your pain. I'm going to give you a pain scale from zero to 10. Zero is no pain. Go up to 10, and that's the kind of the equivalent of the pain that would send you immediately to the emergency room. You wouldn't think twice about it. The kind of pain that you stick your hand on your burner.

PET: Yeah.

ALJ: Hot burner. That's 10 level pain.

PET: Ten.

ALJ: How would you rate the pain you have to deal with day in and day out? Not at its worst, generally.

PET: At its worst?

ALJ: Not at its worst.

PET: Not at its worst.

ALJ: Generally, where would it fall on that scale?

PET: I would say five, you know. Six.

ALJ: Okay. All right, and at its worst, where does it get?

PET: I would say seven or eight.

**MEMORANDUM DECISION AND ORDER - 12**

| | |
|---|---|
| ALJ: | How often do you get seven or eight level pain? |
| PET: | It depends on what I'm doing really. I mean, if I was working on, when I was working on a dry chain, it would probably happen, you know, three or four times a day. It would just, it'd start. |
| ALJ: | But you were able to work with that pain? |
| PET: | Yeah, I had to. |
| ALJ: | Okay. All right. And are you having any pain today? |
| PET: | Yes. |
| ALJ: | What level are you having today? |
| PET: | Probably five. |
| ALJ: | Okay. Did you take any pain medication today? |
| PET: | I took Tramadol earlier. |
| ALJ: | What time? |
| PET: | 10:00 |

(AR 46-47, 59-62).

The ALJ acknowledged these allegations in his Decision, but then went on to provide clear and convincing reasons for tempering their import vis à vis Petitioner's residual functional capacity. (AR 17-19). For instance:

- Within the same "Function Report," Petitioner admitted that he goes outside as much as three times a day, depending on the weather; could drive a car and shop for groceries each week; could pay bills and manage a checkbook; enjoys archery, hunting, fishing, hiking, and woodcrafts (though he could no longer shoot his bow or perform activities for as long as he used to); has no problem with personal care tasks; prepares simple meals daily; can do house work and yard work, including mowing the lawn with a riding mower; cares for his cat; has no problems paying attention, following spoken instructions,

**MEMORANDUM DECISION AND ORDER - 13**

  or getting along with authority figures; and has no problems with handling stress or changes in routine. (AR 17) (citing AR 166-171)).[3]

- During the September 6, 2012 hearing, Petitioner testified that he did odd jobs every now and then, including painting his sister's/brother-in-law's house (though, if he worked 4-6 hours, he experienced severe pain); reads books on an average of 3-4 hours each day; does chores around the house, including dishes, laundry, and meal preparation; does woodworking; visits family; and goes fishing. (AR 17) (citing (AR 50-58)).[4]

- Rob Fuller, M.D.'s May 16, 2011 consultative examination report indicated that his "exam showed an almost completely normal exam with the small exception of slightly reduced lumbar spine flexion with tenderness" and that he "would expect [Petitioner] to have no difficulty with any employment with the possible exception of heavy labor" and that "[Petitioner] is able to walk, stand, sit, carry light to moderate loads, hear and speak well, travel, and handle small objects." (AR 18 (citing (AR 270-272)). Ultimately, the ALJ assigned only "some weight" to Dr. Fuller's evaluation, finding that Petitioner actually had *greater* limitations than those opined by Dr. Fuller. (AR 18).

- Jennifer Eickstadt, PA-C's November 30, 2011 "Office Visit Form" stated that Petitioner demonstrated "neg[ative] s[traight] l[eg] r[aise] [test]"; normal strength bilateral; and was "able to heel/toe walk" with some tenderness on palpation at the mid-thoracic spine and lumbar spine. (AR 18) (citing AR 292-293)).

- Petitioner's January 13, 2012 spinal x-rays revealed only mild lumbar spine degeneration and mild thoracic degeneration with mild scoliosis. (AR 18) (citing AR 279-280)).

- Dr. Vu testified at the September 6, 2012 hearing that objective support for Petitioner's stated exertional limitations was lacking. (AR 18) (citing (AR 40-41)).

- John Crites, M.D.'s July 18, 2011 medical evaluation opined that Petitioner could lift/carry 20 pounds occasionally, 10 pounds frequently, stand/walk six hours, and sit six hours in an eight-hour workday, without any other

---

[3] Petitioner did not respond to the question asking: "What were you able to do before your illnesses, injuries, or conditions that you can't do now?" (AR 166).

[4] Moreover, in response to the ALJ's question about whether he would be able to do a "no-brainer job," "sitting in a kiosk," Petitioner commented two separate times that he'd "like to try," and wasn't sure he couldn't do it. (AR 50).

**MEMORANDUM DECISION AND ORDER - 14**

>limitations. (AR 18) (citing (AR 79-81)); *see also* (AR 83) ("Your conditions do not qualify you for disability benefits under our rules. Your condition results in some limitations in your ability to perform work related activities. While you are not capable of performing work you have done in the past, you are able to perform work that is less demanding. We have determined that your condition is not severe enough to keep you from working. We considered the medical and other information, your age, education, training, and work experience in determining how your condition affects your ability to work.").

These reasons provide a clear and convincing explanation as to why the ALJ did not find Petitioner entirely credible. Whether the undersigned agrees with this conclusion is immaterial; the ALJ's conclusion, while potentially at odds with another's interpretation of that same evidence is nonetheless supported by substantial evidence in the record. As required by controlling law, the ALJ will not be second-guessed here. *See Batson v. Comm'r of Social Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) ("The Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision.").

Again, the March 9, 2012 MRI report does not discuss Petitioner's limitations, only his already-understood back issues. *See supra*. Petitioner's and/or his counsel's subjective belief otherwise does not make it so. *See* Pet.'s Brief, pp. 4-5 (Docket No. 14) ("The new evidence, and specifically the two (2) MRI's therefore support the [Petitioner's] testimony, which was found to be not credible, and the opinion of the primary treating doctor, which was found to be unsupported by the record."). "In the absence of any substantive or meaningful analysis, Petitioner's assertions are undeveloped and wholly inadequate." *Gump v. Colvin*, 2015 WL 5123708, *3 (W.D. Pa. 2015) (citing *Pennsylvania v. U.S. Dept. of Health & Human Servs.*, 101 F.3d 939, 945 (3rd Cir. 1996) (conclusory assertions, unaccompanied by substantial argument, will not suffice to bring issue before court)). As a result, Petitioner's arguments concerning the

**MEMORANDUM DECISION AND ORDER - 15**

March 9, 2012 MRI report do nothing to change either the ALJ's credibility analysis generally, or the ALJ's disability determination in particular. With all this in mind, the Court finds, after considering the expanded record as a whole, there is not a reasonable probability that the additional evidence would have made a difference to the ALJ's finding that Petitioner did not have a severe impairment.

## IV.  CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility.  *Allen*, 749 F.2d at 579; *Vincent ex. rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642.  If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, a reviewing court may not substitute its interpretation for that of the ALJ.  *Key*, 754 f.2d at 1549.

I conclude that the evidence relied upon by the ALJ – coupled with the additional evidence submitted post-hearing – can reasonably and rationally support the ALJ's well-formed conclusions, despite the fact that such evidence may be susceptible to a different interpretation. Accordingly, the ALJ's decisions as to Petitioner's disability claim were based on proper legal standards and supported by substantial evidence.  Therefore, the Commissioner's determination that Petitioner is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record and is based upon an application of proper legal standards.

Accordingly, the Commissioner's decision is affirmed.

///

///

///

///

**MEMORANDUM DECISION AND ORDER - 16**

## V.  ORDER

Based on the foregoing, the decision of the Commissioner is AFFIRMED and this action is DISMISSED in its entirety with prejudice.

DATED:  **September 14, 2015**

_____
Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 17**